UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INDULFO PANDALES-ANGULO,

v.  Case No. 8:01-cr-294-T-17MSS
 8:05-cv-1894-T-17MSS

UNITED STATES OF AMERICA.

O R D E R

This cause is before the Court upon Defendant's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. Cv. Doc. 1; Cr. Doc. 432. The Government has filed a response with exhibits. Cv. Doc. 8. Defendant has filed a reply. Cv. Doc. 11.

RELEVANT FACTS

In August 2001, a counter- narcotics team aboard a United States Navy ship in the Pacific Ocean encountered the fishing vessel Recuerdo. Cr. Doc. 346 at 28; Cr. Doc. 349 at 68-69. United States Coast Guard personnel eventually boarded the Recuerdo in international waters south of the Galapagos Islands after learning that the vessel had received a suspicious transfer while at sea. Cr. Doc. 346 at 132, 137; Cr. Doc. 349 at 81,

84. Pandales-Angulo and nine crew members were aboard at the time. Cr. Doc. 346 at 137-38, 174-75; Cr. Doc. 349 at 86-87, 93.

During the boarding, the team found some commercial fishing equipment, much of which was in poor condition or unusable, and a small amount of fish, consistent with the crew's need for personal consumption. Cr. Doc. 346 at 12-13, 140; Cr. Doc. 74-77, 118, 121-25, 145, 159. After a thorough examination of the Recuerdo, which included drilling through recently laid tile, breaking apart fresh cement, and removing bolted access covers and steel plates, the boarding team found 17,177 pounds (6864 kilograms) of cocaine hidden in secret compartments. Cr. Doc. 346 at 178; Cr. Doc. 347 at 135; Cr. Doc. 349 at 129, 134-37, 155-56.

## PROCEDURAL BACKGROUND

In May 2002, Pandales-Angulo was tried before a jury and convicted of conspiring to possess five kilograms or more of cocaine with intent to distribute it while aboard a vessel subject to the jurisdiction of the United States and possessing five kilograms or more of cocaine with intent to distribute it while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. app. § 1903(a) and 21 U.S.C. § 841(b). Cr. Doc. 228; see Cr. Doc. 3.

Two weeks before trial, co-defendant Ezequiel Valencia-Criollo had moved to dismiss the indictment, arguing that the Maritime Drug Law Enforcement Act ("the MDLEA") is unconstitutional in light of the United States Supreme Court's opinion in Apprendi v. New Jersey, 530 U.S. 466 (2000), and because 46 U.S.C. app. § 1903 removes from the jury the determination of whether the vessel involved in this case was subject to jurisdiction of the United States. Cr. Docs. 202, 203. (The Court later entered an oral order stating that

all motions would be adopted by all defendants unless the Defendant opted out. Cr. Doc. 349 at 10.)  The Government opposed both motions. Cr. Docs. 204, 207.

The Court denied the motions to dismiss, ruling that the defendants did not have standing to challenge a violation of the applicable agreement between the United States and Colombia that had conferred jurisdiction in this case, i.e., Article 16 of The Agreement between the United States and Colombia to Suppress Illicit Traffic by Sea ("Article 16"). Cr. Doc. 178. The Court also determined that, because drug trafficking is universally condemned, the Court's exercise of jurisdiction in a prosecution involving maritime drug trafficking was consistent with the protective principle of international law. Cr. Doc. 178.

On May 14, 2002, co-defendant Rigoberto Garcia-Gonzalez filed a motion for an evidentiary hearing on the issue of subject matter jurisdiction. Cr. Doc. 208. The Government responded to the motion on May 20, 2002, stating that an evidentiary hearing was unwarranted because the issue of subject matter jurisdiction could be resolved by reference to the relevant statute and the treaty between the United States and Colombia and by the introduction of certified documents. Cr. Doc. 214. To establish that the Colombian government had consented to the United States' exercise of jurisdiction under the circumstances of this case, the Government attached three exhibits to its response, including the affidavit of Jodi Avergun, the Chief of the Narcotic and Dangerous Drug Section of the Criminal Division of the United States Department of Justice. Cr. Doc. 214, Exhibit 3. In the affidavit, Avergun confirmed that the United States had exercised jurisdiction in this case pursuant to Article 16 by which Colombia conferred jurisdiction to a foreign state when evidence of illicit drug trafficking is found on a Colombian vessel outside Colombia's territorial waters and the foreign state has previously initiated criminal

action for that drug trafficking activity. Cr. Doc. 214, Exhibit 3.

Just prior to the start of the trial, the Court denied Garcia-Gonzalez's motion for an evidentiary hearing. Cr. Doc. 349 at 11-12. The Court determined that it would not revisit the prior ruling regarding subject matter jurisdiction. Cr. Doc. 349 at 9-12.

At the close of the Government's case-in-chief, the defendants moved for judgments of acquittal, asserting, among other things, that the Government had failed to offer any evidence to establish jurisdiction in this case. Cr. Doc. 347 at 139-41. The prosecutor responded that the Government, in response to Garcia-Gonzalez's motion for evidentiary hearing, had filed the required certificate and affidavit to establish jurisdiction and that the Court had relied upon those documents in determining that the defendants' vessel had been a vessel subject to the jurisdiction of the United States. Cr. Doc. 347 at 141. After taking the matter under advisement, Cr. Doc. 347 at 142, the Court denied the motions for judgment of acquittal, Cr. Doc. 379 at 36-37. In October 2002, the Court sentenced Pandales-Angulo to 235 months incarceration. Cr. Doc. 312.

Pandales-Angulo timely filed a direct appeal. Cr. Doc. 324. On appeal, he argued that (1) this Court had erred by removing from the jury the issue of whether he had been aboard a vessel subject to the jurisdiction of the United States and (2) the Court had erred by failing to award a reduction for his asserted minor role in his offense. See Exhibit A (appellant's brief). On April 15, 2004, the United States Court of Appeals for the Eleventh Circuit affirmed Pandales-Angulo's convictions and sentence. Cr. Doc. 413. The Eleventh Circuit stated that the defendants had raised the issue of "whether the district court committed plain error by admitting [Avergun's affidavit], submitted by the Government in response to Garcia-Gonzalez's motion for an evidentiary hearing on the issue of subject

4

matter jurisdiction" and held that "the district court correctly resolved the legal question of subject matter jurisdiction, relying on the government's considerable evidence that convincingly established that Colombia "ha[d] consented or waived objection to the enforcement of United States' law by the United States with respect to the Recuerdo." Cr. Doc. 413 at 3, 5.

Garcia-Gonzalez filed a petition for rehearing of the Eleventh Circuit's decision on May 6, 2004. See Exhibit C. By order dated May 12, 2004, the Eleventh Circuit allowed three of Pandales-Angulo's co-defendants to adopt Garcia-Gonzalez's petition for rehearing.

Although the United States Supreme Court meanwhile had held in Crawford v. Washington, 541 U.S. 36, 68 (2004), that admission of testimonial evidence violates the Confrontation Clause of the Sixth Amendment unless the declarant is unavailable and the defendant has been afforded a prior opportunity for cross-examination, the defendants did not assert on rehearing that the consideration of Avergun's affidavit had been a violation of their right of confrontation. See Exhibit C. The Eleventh Circuit denied the petition for rehearing on May 21, 2004.

Pandales-Angulo filed a petition for writ of certiorari in the United States Supreme Court. See Exhibit D. In the petition for certiorari, he contended that the Eleventh Circuit had violated his right to due process by affirming this Court's judgment because the Government never had offered the Avergun affidavit as evidence and, citing Crawford, that reliance upon the affidavit also violated his Sixth Amendment right of confrontation. See Exhibit D. On October 4, 2004, the Supreme Court denied the petition. Pandales-Angulo v. United States, 543 U.S. 859 (2004).

On October 3, 2005, Pandales-Angulo signed the present motion to vacate, set aside, or correct sentence filed pursuant to section 2255, asserting (1) that the Avergun affidavit was inadmissible under the Sixth Amendment to support the United States' exercise over the Colombian fishing vessel aboard which Pandales-Angulo had transported cocaine; (2) 46 U.S.C. app. § 1903 is unconstitutional in light of Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005), because the statute does not require that drug quantity be proved beyond a reasonable doubt for sentencing purposes; and (3) his trial counsel was ineffective in failing to present expert testimony to substantiate the defense that the fishing vessel was in acceptable condition for fishing purposes and to investigate why the vessel had remained in port in Colombia for minor repairs. Doc. 1. The motion to vacate is timely.

## DISCUSSION

Pandales-Angulo's challenge to sentence is founded on the Supreme Court's opinion in Booker, which extended to the United States Sentencing Guidelines the procedural rule announced in Apprendi v. New Jersey, 530 U.S. 477 (2000). Pandales-Angulo's challenge to his sentence based upon Booker is not cognizable because Booker is not retroactively applicable to cases on collateral review. See Varela v. United States, 400 F.3d 864, 867 (11th Cir.) (per curiam), cert. denied, 126 S. Ct. 312 (2005). In Varela, the Eleventh Circuit explained that Booker's constitutional rule is a "prototypical procedural rule" that "falls squarely under the category of new rules of criminal procedure that do not apply retroactively to section 2255 cases on collateral review" and is not a "'watershed rule[ ] of criminal procedure' to be applied retroactively." 400 F.3d at 867-68. Accordingly, relief pursuant to Booker is not available to Pandales-Angulo on collateral review pursuant to

section 2255 or otherwise, see Varela, 400 F. 3d at 868.

Moreover, because the indictment alleged, Cr. Doc. 3, and the jury found, Cr. Doc. 379 at 42, that Pandales-Angulo's offenses had involved five kilograms or more of cocaine, this Court did not violate the Sixth Amendment by increasing his sentence based upon drug quantity, see United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005). Absent a violation of the Sixth Amendment, Pandales-Angulo's Booker claim is only premised upon statutory error, see Shelton, 400 F.3d at 1330, for which section 2255 affords no relief, see Hill v. United States, 368 U.S. 424, 428 (1962).

Accordingly, Pandales-Angulo not entitled to relief from his sentence based on Booker.[1]

Pandales-Angulo is not entitled to relief on his claim that consideration of the Avergun affidavit for purposes of jurisdiction under section 1903 violated his Sixth Amendment right of confrontation because he has procedurally defaulted this claim. Ordinarily, claims that previously were available and were not raised in a prior proceeding are procedurally defaulted and barred from consideration on collateral review. Bousley v. United States, 523 U.S. 614, 622-24 (1998); United States v. Frady, 456 U.S. 152, 166 (1982); McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001). When a defendant

---

[1] Even if this argument were cognizable, it would not support relief because the record demonstrates no prejudice to substantial rights. If this Court were to resentence Pandales-Angulo, it still would be required to calculate and consider Pandales-Angulo's sentencing guidelines range. See United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). Thus, because nothing in the record indicates that this Court would have imposed a lower sentence if the guidelines had not been mandatory at the time that it sentenced Pandales-Angulo, see Cr. Doc. 340, Pandales-Angulo also cannot establish that his sentence contains a "'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" See Reed v. Farley, 512 U.S. 339, 348 (1994); Burke v. United States, 152 F.3d 1329, 1331-32 (11th Cir. 1998); cf. United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir.), cert. denied, 125 S. Ct. 2935 (2005).

raises a constitutional claim on collateral review that he failed to raise in the trial proceedings or on direct appeal, he bears the burden of establishing cause and actual prejudice resulting from the error or actual innocence to excuse the defaults. Bousley, 523 U.S. at 622. To show cause for not raising a claim in an earlier proceeding, a defendant must show "some external impediment preventing counsel from constructing or raising the claim." High v. Head, 209 F.3d 1257, 1262 (11th Cir. 2000) (quoting McCleskey v. Zant, 499 U.S. 467, 497(1991)).

To establish prejudice, the defendant must prove that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." See Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999). This is a heavier burden than the burden of establishing plain error on appeal. See Frady, 456 U.S. at 164, 166. The futility of raising a claim does not constitute sufficient cause to excuse the default. Bousley, 523 U.S. at 623; Jones v. United States, 153 F.3d 1305, 1307-08 (11th Cir. 1998).

Pandales-Angulo did not raise a Sixth Amendment claim during the trial proceedings or on direct appeal to the Eleventh Circuit. See, e.g., Cr. Docs. 346 through 349 (trial transcripts); Exhibits A-1, A-2 (appellate briefs). To excuse his default, Pandales-Angulo explains that he did not learn of the asserted Sixth Amendment violation until the attorney who filed his petition for writ of certiorari advised him of the violation. Pandales-Angulo's explanation does not excuse his default. Because there was no external impediment preventing counsel from constructing or raising the Sixth Amendment claim at trial or on direct appeal, Pandales-Angulo cannot establish cause for failing to raise his Sixth Amendment claim at those opportunities.

Pandales-Angulo also cannot establish that consideration of the Avergun affidavit

caused actual prejudice. In her affidavit, Avergun explained that, pursuant to Article 16, the United States had been permitted to exercise jurisdiction over the Recuerdo because the Coast Guard had found the Recuerdo outside Colombia's maritime borders and the United States had initiated a criminal investigation aboard the Recuerdo that had resulted in an "arrestable offense." Cr. Doc. 214, Exhibit 3. Even without Avergun's affidavit, however, the Government proved that the Recuerdo was "subject to the jurisdiction of the United States" under section 1903.

A marine vessel, flying the flag of a foreign nation, is subject to the territorial jurisdiction of the United States if "the flag nation has consented or waived objection to the enforcement of United States law . . . ." 46 U.S.C. app. § 1903(c)(1)(C). This prerequisite can be satisfied if consent of the flag nation is provided any time before trial. See United States v. Suerte, 291 F.3d 366, 376 (5th Cir. 2002); United States v. Greer, 223 F.3d 41, 55 (2d Cir. 2000). In the present case, Coast Guard Petty Officer Jeffrey Leas testified that the Coast Guard had intercepted the Recuerdo in international waters near the Galapagos Islands; that the owner of the Recuerdo was a Colombian national; and that the government of Colombia had consented to the United States' exercise of jurisdiction over the Recuerdo. Cr. Doc. 346 at 50; Cr. Doc. 349 at 84, 114. Because Petty Officer Leas's undisputed testimony established that the Recuerdo was a vessel subject to the jurisdiction of the United States, any consideration of the Avergun affidavit, either by this Court or the Eleventh Circuit, cannot have unfairly prejudiced Pandales-Angulo. Moreover Pandales-Angulo was not unfairly prejudiced because the district court did not err in considering the Avergun affidavit.

Furthermore, consideration of the Avergun affidavit was not error. Reliance upon

the Avergun affidavit under section 1903 did not violate Pandales-Angulo's Sixth Amendment right of confrontation. The right of confrontation is a trial right pertaining to proof of guilt in the prosecution before the jury, see U.S. Const. amend. VI; therefore, Crawford does not apply to the consideration of the Avergun affidavit in the Court's preliminary determination of whether the Recuerdo was subject to the (territorial) jurisdiction of the United States. See, e.g., United States v. Cantellano, 430 F.3d 1142, 1146 (11th Cir. 2005) (Crawford did not change prior law recognizing that right of confrontation does not apply to non-capital sentencing context and does not prohibit consideration of hearsay in sentencing proceedings); United States v. Chau, 426 F.3d 1318, 1322 (11th Cir. 2005) (Crawford does not apply at sentencing); see also United States v. Martinez, 413 F.3d 239, 242-43 (2d Cir. 2005) (same), cert. denied, 126 S. Ct. 1086 (2006); United States v. Martin, 382 F.3d 840, 844 & n.4 (8th Cir. 2004) (Crawford not applicable in supervised release revocation hearing). Because Crawford did not prohibit the Court's consideration of the Avergun affidavit for purposes the pre-trial determination of territorial jurisdiction under section 1903, consideration of the affidavit cannot have been error under Crawford. In Pandales-Angulo's direct appeal, relying on its decision in United States v. Tinoco, 304 F.3d 1088 (11th Cir. 2002), the Eleventh Circuit determined in this case that the preliminary question of whether the vessel is "subject to the jurisdiction of the United States" within the meaning of section 1903 is a legal question, not an element of a substantive offense that would require submission to the jury, and that this Court correctly had resolved the legal question by relying upon the "considerable evidence that convincingly established that Colombia" had consented to or waived the United States' exercise of jurisdiction with respect to the Recuerdo and its crew.  Cr. Doc. 413 at 4-5.

Thus, whether the Recuerdo was a vessel "subject to the jurisdiction of United States" under section 1903 is a question of law that the Court could have resolved by considering the Avergun affidavit. See Tinoco, 304 F.3d at 1114.

Section 1903's language reveals Congress' explicit contemplation of the use of hearsay to prove jurisdiction. See United States v. Guerrero, 114 F.3d 332, 340 (1st Cir. 1997); United States v. Romero, 32 F.3d 641, 649 (1st Cir. 1994).

The Recuerdo was registered in Colombia, Cr. Doc. 349 at 114, and it became a vessel subject to the jurisdiction of the United States once Colombia had "waived objection to the enforcement of United States law by the United States." See 46 U.S.C. app. § 1903(c)(1)(A). "Consent or waiver of objection by a foreign nation to the enforcement of United States law by the United States . . . may be obtained by radio, telephone, or similar oral or electronic means, and is conclusively proved by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. app. § 1903(c). Even apart from the statute, Avergun's affidavit was admissible hearsay that this Court properly could have considered to determine whether the Recuerdo was a vessel subject to the jurisdiction of the United States. See Fed. R. Evid. 803(8)(A) (excepting from the hearsay rule public agency statements "in any form" setting forth "the activities of the office or agency"); United States v. Aikins, 946 F.2d 608, 614 (9th Cir. 1991); see also United States v. Rojas, 53 F.3d 1212, 1216 (11th Cir. 1995); accord United States v. Mena, 863 F.2d 1522, 1531 (11th Cir. 1989).

Furthermore, this Court properly could have considered the Avergun affidavit even though Avergun was not the Secretary of State or his designee. Although a certification by the Secretary of State or his or her designee is conclusive proof of a foreign nation's consent to or waiver of the enforcement of United States laws over a vessel, 46 U.S.C.

11

app. § 1903(c), that certification is not the only means by which the United States may establish the waiver. Rojas, 53 F.3d at 1214; Mena, 863 F.2d at 1531.

Finally, consideration of the Avergun affidavit, even if error, would have been harmless. Leas's testimony established that the Recuerdo was a vessel subject to the jurisdiction of the United States because Colombia had consented to the United States' exercise of jurisdiction over the Recuerdo and its crew. Consequently, the Avergun affidavit was merely cumulative of Leas's testimony. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (no reversal of conviction for Confrontation Clause violation that was harmless beyond a reasonable doubt).

### Counsel Was Not Ineffective In Failing To Present Expert Testimony Regarding The Condition Of The Recuredo

Ineffectiveness of counsel may be grounds for vacating a conviction or sentence if (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

Co-defendants Alvaro Bolanos-Munoz, the Recuerdo's captain, and Jose Nieves Quinones-Grueso, a machinist, testified at trial that, during a prior fishing trip, the Recuerdo's propeller had broken, that the Recuerdo had been towed back to a Colombian port for repair, that the Recuerdo had returned to sea for a fishing trip after the repair, and that they had not seen any cocaine on board until the Coast Guard intercepted the Recuerdo. Cr. Doc. 347 at 183-86, 192; Cr. Doc. 348 at 15-21. Because those defendants

12

explained to the jury that the Recuerdo had been in port for repair and that the crew actually had fished aboard the Recuerdo before the Coast Guard had stopped it, Pandales-Angulo's counsel could not have been ineffective by failing to present cumulative evidence regarding the same matters. See United States v. Dimatteo, 759 F.2d 831, 833 (11th Cir. 1985).

The Court does not find Pandales-Angulo's arguments in his reply persuasive.

Accordingly, the Court orders:

That Pandales-Angulo's motion to vacate (Cv. Doc. 1; Cr. Doc. 432 ) is denied. The Clerk is directed to enter judgment against Pandales-Angulo in the civil case and to close that case.

IT IS FURTHER ORDERED that defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances. Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on May 31, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA:  Yvette Harrison
Pro se: Indulfo Pandales Angulo